# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Ammianus Pompilius
*also known as*
Anthony Prentice,

            Plaintiff

v.

State of Nevada, et al.,

            Defendants

Case No.: 2:18-cv-01801-APG-VCF

**Order Screening Second Amended Complaint (ECF No. 13)**

Plaintiff Ammianus Pompilius is in the custody of the Nevada Department of Corrections (NDOC).  He has submitted a second amended civil rights complaint (SAC) under 42 U.S.C. § 1983. ECF No. 13.  Pompilius also filed two motions for preliminary injunction (ECF Nos. 14, 15) and a motion to extend copy work limit (ECF No. 16).  I now screen the SAC under 28 U.S.C. § 1915A and address the motion for copy work extension.  I will address the motions for preliminary injunction in a separate order.

## I.      SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2).  *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim under 42 U.S.C.

§ 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act (PLRA) requires a federal court to dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations,

a plaintiff must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may therefore be dismissed *sua sponte* if the claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II. SCREENING OF SAC

Pompilius sues multiple defendants for events that took place while Pompilius was incarcerated at Ely State Prison (ESP) and High Desert State Prison (HDSP). ECF No. 13 at 1. Pompilius sues defendants State of Nevada, NDOC, NDOC Director Dzurenda, Deputy Director Wickham, Deputy Director Thomas, Chaplain Calderin, Religious Review Team (RRT) Member

Snyder, Warden Williams, Warden Baker, Warden Filson, Deputy Director Triston, Caseworker

Castro, Doe inspector general, and Doe RRT members. *Id.* at 1-4. Pompilius alleges 11 counts

and seeks monetary and injunctive relief. *Id.* at 47, 54-55.

### A. Count 1

In Count 1, Pompilius alleges the following: Pompilius has been a practicing Qayin

Thelemite since 2008. ECF No. 13 at 5, 34. In 2014, while at Lovelock Correctional Center

(LCC), Pompilius was the Thelemite facilitator and made numerous attempts to have Calderin,

Wickham, Thomas, Snyder, Dzurenda, and Does change the Administrative Regulation (AR)

810 to properly reflect the appropriate holidays[1] of the Thelemite religious group. *Id.* at 5.

Pompilius made the requests on behalf of all Thelemites. *Id.* at 6. On July 16, 2015, Pompilius

received a response to his informal grievance which stated, "Your RRT request for Thelemite

holidays has been approved by the department. Please work through the chaplain to

accommodate this request. Grievance upheld." *Id.*

Pompilius later transferred to ESP and then to HDSP in February 2017. *Id.* When spoke

to the inmate Thelemite facilitator at HDSP, Pompilius learned that there had been no changes to

the AR810 regarding Thelemite holidays. *Id.*

After prison officials put Pompilius on the Thelemite chapel list, he spoke to Calderin

and gave Calderin a copy of the grievance approving Thelemite holidays. *Id.* Calderin stated that

he would look into it. *Id.* Pompilius submitted holiday requests for every Thelemite holiday but

neither Calderin nor Williams approved the requests. *Id.* at 6-7.

Although prison officials had amended AR810 three times since Pompilius's grievance

had been granted in 2015, Dzurenda, Wickham, Thomas, Snyder, Calderin, and Doe RRT

---

[1] Pompilius uses the terms "holidays" and "holy days" interchangeably.

members never corrected the Thelemite holidays in AR810. *Id.* at 7.  When Pompilius followed up on the issue, Williams did not respond, and Calderin told Pompilius and the inmate facilitator to review AR810 for the approved Thelema holidays. *Id.*  In denying the grievance, Calderin stated that the prison could not accommodate every religion's holidays. *Id.*  However, every other religion outlined in AR810 had their holidays approved. *Id.*  Prison officials had only denied the observance of Thelemite religious holidays. *Id.*  Williams denied the grievance and stated that the NDOC could not accommodate everyone's religious holidays. *Id.* at 8.  Pompilius filed a second level grievance. *Id.*

In October 2018, Leavitt and Hubbard-Pickett asked Pompilius for a copy of his original grievance. *Id.*  Pompilius gave Hubbard-Pickett a copy of the grievance. *Id.*  On November 19, 2018, Thomas partially granted Pompilius's grievance. *Id.*  Thomas responded that he had researched the old RRT minutes from January 2015 and there was "an indication that the following was approved as Thelema holy days, and that the faith group overview [had not been] corrected then to reflect that action." *Id.* at 8-9.  Thomas stated that the current RRT would recognize the approved holy days that the old RRT had recognized and listed those days. *Id.* at 9.  Thomas also stated that prison officials would prepare an advisory about the matter and that those holy days should be recognized for the Thelema. *Id.*  Thomas noted that if the Thelema followers wished to amend their list of holy days, they would have to submit a request for accommodation of religious practices. *Id.*

Since February 2017, Calderin and Williams had been on notice that the RRT had approved the Thelemite holy days because Pompilius had submitted copies of the approved grievance to them. *Id.*  Dzurenda failed to properly list the approved Thelemite holy days in the new amended AR810. *Id.* at 9-10.

Pompilius alleges violations of the First Amendment free exercise of religion, the Fourteenth Amendment equal protection, and the Religious Land Use and Institutionalized Persons Act (RLUIPA). *Id.* at 5.

### 1.     Free Exercise of Religion

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const. amend. I.  The United States Supreme Court has held that inmates retain protections afforded by the First Amendment "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  "In general, a plaintiff will have stated a free exercise claim if: (1) 'the claimant's proffered belief [is] sincerely held; and (2) 'the claim [is] rooted in religious belief, not in purely secular philosophical concerns.'" *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015).  The Supreme Court has recognized that an inmate's "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives–including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.*  During summary judgment, courts evaluate prison regulations alleged to infringe on constitutional rights under the "reasonableness" test set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *Shabazz*, 482 U.S. at 349; *see Hrdlicka v. Reniff*, 631 F.3d 1044, 1046-50 (9th Cir. 2011) (analyzing the *Turner* factors).

Pompilius states a colorable claim for violations of the free exercise of religion.  Based on the allegations, prison officials approved the Thelemite holidays in 2015 but failed to amend AR810 to include those holidays.  This prevented Pompilius from being able to observe those

1    holidays in prison.  This claim will proceed against defendants Calderin, Williams, Dzurenda,

2    Wickham, Thomas, Snyder, and Doe RRT members (when Pompilius learns their identities).[2]

3              **2.       Equal Protection**

4              The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that

5    all similarly situated persons be treated equally under the law. *City of Cleburne, Tex. v. Cleburne*

6    *Living Ctr.*, 473 U.S. 432, 439 (1985).  In order to state an equal protection claim, a plaintiff

7    must allege facts demonstrating that defendants acted with the intent and purpose to discriminate

8    against him based upon membership in a protected class, or that defendants purposefully treated

9    him differently than similarly situated individuals without any rational basis for the disparate

10   treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of*

11   *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

12            Pompilius states a colorable equal protection claim.  Based on the allegations, every other

13   religion outlined in AR810 had their religious holidays approved except for the Thelemites.  This

14   is sufficient to state a colorable claim on screening and will proceed against defendants Calderin,

15   Williams, Dzurenda, Wickham, Thomas, Snyder, and Doe RRT members (when Pompilius

16   learns their identities).

17            **3.       RLUIPA**

18   RLUIPA provides in relevant part:

19            No government shall impose a substantial burden on the religious
             exercise of a person residing in or confined to an institution . . .
20           unless the government demonstrates that imposition of the burden

21   _____

[2]        Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in
22   some cases where the identity of the parties will not be known prior to filing a complaint but can
     subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.
23   1980).  If the true identity of any of the Doe Defendants comes to light during discovery,
     Pompilius may either move to substitute their true names or move to amend his complaint to
     assert claims against them at that time.

> on that person–(1) is in furtherance of a compelling governmental
> interest; and (2) is the least restrictive means of furthering that
> compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)-(2).  "Claims brought under RLUIPA are subject to a strict scrutiny

standard, which replaces the reasonableness standard employed in cases involving constitutional

violations." *Shilling v. Crawford*, 536 F.Supp.2d 1227, 1232 (D. Nev. 2008).

RLUIPA broadly defines "religious exercise" as "any exercise of religion, whether or not

compelled by, or central to, a system of religious belief." 42 U.S.C.A. § 2000cc-5(7)(A).

"RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his

religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42

U.S.C.A. § 2000cc-3(g)).  The plaintiff bears the burden of demonstrating a prima facie claim

that the prison's policies or actions constitute a substantial burden on the exercise of his religious

beliefs. *Id*. at 994.

Under RLUIPA, a plaintiff may sue for injunctive relief but not monetary damages.

*Sossamon v. Texas*, 563 U.S. 277, 280 (2011) (holding that the States, by accepting federal

funds, do not consent to waive their sovereign immunity to suits for money damages); *Jones v.*

*Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (holding that "RLUIPA does not authorize suits

for damages against state officials in their individual capacities because individual state officials

are not recipients of federal funding").  With respect to injunctive relief, "[o]nce an inmate is

removed from the environment in which he is subjected to the challenged policy or practice,

absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision

on the merits of his claim." *Jones*, 791 F.3d at 1031.

I dismiss the RLUIPA claim without prejudice.  Based on the allegations, in November

2018 Thomas fixed the discrepancy between the 2015 Thelemite holiday approval and AR810.

As such, Pompilius cannot seek injunctive relief on this issue because Thomas resolved it.

**B.      Count 3**

In Count 3, Pompilius alleges the following: Pompilius is a Qayin Thelemite. ECF No. 13 at 12.  Qayinism is its own religion which is distinct and separate from the Thelema religion. *Id.* However, both Qayinites and Thelemics are practicing Thelemites. *Id.*  As a Qayinite, Pompilius sincerely believes that he must maintain a kosher diet and lists the religious bases for that belief. *Id.*  Calderin did not respond to Pompilius's numerous requests to switch to a common fare/kosher diet. *Id.* at 12-13.

On May 28, 2018, Pompilius filed an informal grievance requesting placement on the common fare diet list. *Id.* at 13.  Calderin denied the grievance because, according to the religious group faith overview, the Thelema faith did not require a special diet. *Id.*  Pompilius filed a first level grievance. *Id.*  In July 2018, Williams responded that the Thelema faith did not require any special diet and noted that the RRT team had denied Pompilius's request for recognition of Qayinite Thelema as a separate religion in June 2018. *Id.*  Williams stated that Pompilius's religion was not recognized by the NDOC and that the Thelema were ineligible for the common fare diet. *Id.*  In September 2018, Pompilius filed his second level grievance which Thomas later denied. *Id.* at 14.

However, Calderin approved common fare diets for at least three Thelema inmates. *Id.* at 15.  When Pompilius heard about this, he submitted another common fare diet request but Calderin did not respond. *Id.*  Snyder and Doe RRT members denied Pompilius's request for a common fare diet. *Id.*  Pompilius alleges violations of the First Amendment free exercise of religion, the Fourteenth Amendment equal protection, and RLUIPA. *Id.* at 12.

**1.      Free Exercise of Religion & RLUIPA**

Pompilius states colorable free exercise of religion and RLUIPA claims.  Based on the allegations, Pompilius is a Qayinite Thelema who sincerely believes in a kosher diet based on the

9

religion's texts.  Nevertheless, prison officials will not approve his request for a common fare diet.  This claim will proceed against Calderin, Williams, Thomas, Snyder, and Doe RRT members (when Pompilius learns their identities).

### 2. Equal Protection

Pompilius states a colorable equal protection claim.  Based on the allegations, Calderin denied Pompilius the ability to have a common fare meal because the Thelema religion did not require a special diet.  However, based on the allegations, Calderin approved common fare diets for three other Thelema inmates but not for Pompilius.  This claim will proceed against Calderin.

### C. Count 5

In Count 5, Pompilius alleges the following: Prison officials classify Thelema as a pagan, nature-based religion. ECF No. 13 at 18.  However, Qayinism is a form of Thelema that stems from Judaism and is temple based. *Id.*  Defendants place all Thelemites under the collective name Thelema but ignore the fact that Thelema, like Christianity, has different sects and subsects. *Id.*  Defendants recognize and make allowances for multiple Christian and Muslim sects but require all Thelema inmates to practice the same sect of Thelema together. *Id.*

Through February 2018, the Thelemites were permitted access to both the chapel and the pagan grounds. *Id.* at 19.  This permitted the Qayinites to practice their ceremonies in a temple setting while the nature-based Thelema sects performed their ceremonies outside on the pagan grounds. *Id.*  This permitted the different Thelema sects to cooperate with each other. *Id.*

However, on February 2, 2018, while the Qayinites were in a room in the chapel performing a ceremony, Calderin barged into the room and informed the participants that they needed to return to their cells due to an emergency. *Id.*  Pompilius and the other inmates started to clean up the room but Calderin told them to leave everything and return to their cells

immediately. *Id.*  The next day, Pompilius received a notice of charges from Calderin for destroying property.  Pompilius pleaded not guilty and prison officials found him not guilty.

On February 9, 2018, Pompilius and the Thelemites returned to the chapel to clean up the room. *Id.* at 19-20.  On February 16, 2018, Calderin informed Pompilius and the other Thelemites that they would not be allowed access to any of the chapel rooms and would be limited to a small storage room and the pagan grounds. *Id.* at 20.  Calderin stated that the decision was "per shift command." *Id.*  Week after week, Calderin denied Pompilius's requests to permit the Qayinites access to the chapel rooms to practice their religion. *Id.*  Calderin denied the requests and told Pompilius that nobody was permitted to use the rooms. *Id.*  However, this was untrue because every other religious group recognized by the prison was permitted access to the chapel except the nature-based religions. *Id.*

Pompilius and some other inmates explained to Calderin that the Qayinite group was temple based. *Id.*  Calderin denied their request to use the chapel. *Id.* at 21.  In April 2018, Pompilius filed a grievance with Williams who denied the request. *Id.*  Pompilius filed grievances with Calderin and Williams to permit the Thelemas to use the classrooms for religious purposes but prison officials denied the requests. *Id.* at 22.  Pompilius also grieved to have the Qayinites recognized as a new faith group. *Id.* at 22-23.  Thomas denied the grievances because Qayin Thelemite was not a recognized faith group and because the RRT members had denied recognition of the religion. *Id.* at 23.  Thomas also noted that Thelema was an earth-based group. *Id.*

Pompilius alleges violations of the First Amendment's free exercise of religion, the Fourteenth Amendment's equal protection, and RLUIPA. *Id.* at 18.

////

1          **1.**      **Free Exercise of Religion and RLUIPA**

2        Pompilius states both free exercise of religion and RLUIPA claims.  Based on the

3 allegations, Pompilius's religion requires the use of a chapel or indoor facility to perform the

4 religion's ritual ceremonies but prison officials have denied him access to such facilities since

5 February 2018 and have prevented him from practicing his religion.  The free exercise of religion

6 and RLUIPA claims will proceed against Calderin, Williams, and Thomas.

7          **2.**      **Equal Protection**

8         Pompilius states a colorable equal protection claim based on religion.  Based on the

9 allegations, prison officials are discriminating against Pompilius and the Qayinite Thelemites by

10 preventing them from using the chapel or indoor space for ceremonies because prison officials

11 do not recognize separate sects within the Thelema religion.  This claim will proceed against

12 Calderin, Williams, and Thomas.

13     **D.**      **Count 7**

14        In Count 7, Pompilius alleges the following: While at HDSP, Pompilius attended

15 Thelema chapel services on Friday mornings between 8:30 a.m. and 9:30 a.m. and from 8:30

16 a.m. to 10:45 a.m. on holy days. ECF No. 13 at 27.  Pompilius details the ceremonies performed

17 by Thelemites and notes that it takes a minimum of 2 hours and 45 minutes to perform their

18 ceremonies excluding the 15 minutes it takes to set up. *Id.* at 27-28.  Despite this, Thelemites

19 only have an average of 45 minutes a week to practice their religion. *Id.* at 28.  Calderin would

20 not permit Thelemites more chapel time. *Id.* at 29.  Pompilius tried to explain that Christians,

21 Jews, and Muslims were not ceremonial magicians and could practice their religions in their

22 cells, the yard, or anywhere else because they only needed prayer and a book. *Id.*  However,

23 Thelemites needed to set up their ceremonial tools and candles in the chapel. *Id.*  Pompilius and

two other Thelemites submitted religious accommodation requests to Calderin. *Id.* Calderin did not respond or grant more chapel time. *Id.*

On November 13, 2017, Pompilius filed an informal grievance. *Id.* Calderin responded that there were 38 services held in the chapel six days a week and that prison officials had to be mindful of everyone's right to the same amount of time. *Id.* Williams denied Pompilius's first level grievance on the issue. *Id.* at 30-31. Thomas denied Pompilius's second level grievance on the issue. *Id.* at 31. In December 2018, Calderin removed the Thelemites from the chapel list, which prevented Thelemites from using the chapel at all. *Id.* at 32.

Pompilius sues Dzurenda, Thomas, Wickham, Williams, Snyder, Calderin, and Doe RRT members for violations of the First Amendment free exercise of religion, the Fourteenth Amendment equal protection, and RLUIPA. *Id.* at 27.

As an initial matter, there are no allegations against Dzurenda, Wickham, Snyder, or Doe RRT members in this count. I dismiss them from this count without prejudice.

### 1.      Free Exercise of Religion and RLUIPA

Pompilius states both free exercise of religion and RLUIPA claims. Based on the allegations, the Thelemites need at least 2 hours and 45 minutes to practice their religion but prison officials allot them only 45 minutes. Based on the allegations, this time constraint limits their ability to practice their religion. These claims will proceed against Calderin, Williams, and Thomas.

### 2.      Equal Protection

Pompilius fails to state a colorable equal protection claim. Based on the allegations, Calderin and the other prison officials appear to be allotting all religions the same amount of chapel time. As such, I dismiss the equal protection claim without prejudice.

### E.      Count 9

In Count 9, Pompilius alleges the following: Pompilius explained the differences between Qayinites and Thelema to Calderin and explained why they were considered two different religions. ECF No. 13 at 34-37.  In March and May 2018, Pompilius submitted religious accommodation requests to Calderin and the Doe RRT members requesting that Qayinites be recognized as an independent religious group. *Id.* at 37-38.  On June 20, 2018, Snyder, on behalf of Doe RRT members, denied the request because nothing Pompilius submitted indicated that Qayinism was antithetical to Thelema and because no other state recognized Qayinism as a faith group. *Id.* at 38.  Pompilius filed grievances on the issue, which Calderin, Williams, and Thomas denied. *Id.* at 40.

When prison officials refused to recognize Qayinism as a separate religion, they effectively banned its practice after eliminating chapel use for the Thelema. *Id.* at 41.  Pompilius notes that other Christian sects use the same religious principles, books, and religious doctrine but are classified as separate religions. *Id.*  In December 2018, Calderin told the Thelema facilitator that Calderin had to remove people from the Thelema list in order to limit the number of people in the chapel. *Id.* at 42.  Calderin removed the Qayinites from the chapel list but did not remove any Christian or Muslim inmates from the chapel list. *Id.*  Pompilius now has no means in which to practice his religion because the defendants have denied him access to the chapel. *Id.* Pompilius cannot practice Qayinism in his cell because he cannot use candles, incenses, or herbs in his cell; those items are permitted only in the chapel. *Id.* at 43.

Pompilius sues the NDOC, Dzurenda, Wickham, Thomas, Snyder, Williams, Calderin, and Doe RRT members for violations of the First Amendment free exercise of religion and Fourteenth Amendment equal protection. *Id.* at 34.  As an initial matter, I dismiss NDOC,

1    Dzurenda, Wickham, and Snyder from this count without prejudice because there are no

2    allegations against them in this count.

3            **1.      Free Exercise of Religion**

4            Pompilius states a colorable claim for free exercise of religion.  Based on the allegations,

5    Pompilius can no longer practice his religion in prison because prison officials do not recognize

6    Qayinism and have restricted his access to the chapel.  This claim will proceed against Calderin,

7    Thomas, Williams, and Doe RRT members (when Pompilius learns their identities).

8            **2.      Equal Protection**

9            Pompilius states a colorable equal protection claim.  Based on the allegations, Calderin

10   removed only Qayinites from the chapel list but did not remove any other religions. This is

11   sufficient to state a colorable claim on screening and will proceed against Calderin.

12       **F.      Count 11**

13           In Count 11, Pompilius alleges the following: Castro, Baker, Triston, Dzurenda, and Doe

14   investigator general failed to stop the harassment committed by correctional officers Mullins,

15   Wheeler, and Gonzales. ECF No. 13 at 47.  Mullins, Wheeler, and Gonzales harassed Pompilius

16   for over a year but the named defendants did nothing to stop the harassment after Pompilius

17   continued to notify them about the harassment. *Id.*  Pompilius previously settled a lawsuit with

18   Mullins, Wheeler, and Gonzales and cannot sue them, but Pompilius seeks to sue the other

19   defendants for not stopping the harassment and retaliation. *Id.* at 47, 50.  From February 2016

20   through October 2016, Mullins, Wheeler, and Gonzales conducted different "retaliatory" acts

21   against Pompilius including destroying property during cell searches, denying shower access,

22   denying fingernail clippers and library requests, verbal harassment over the intercom, and firing

23   Pompilius from his job. *Id.* at 47-49.  Pompilius alleges violations of the Eighth Amendment

1  right to be free from cruel and unusual punishment and Fourteenth Amendment due process and

2  equal protection against Castro, Baker, Triston, Dzurenda, and Doe investigator general.

3       A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal

4  participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A

5  supervisor is only liable for constitutional violations of his subordinates if the supervisor

6  participated in or directed the violations, or knew of the violations and failed to act to prevent

7  them. There is no respondeat superior liability under [§]1983." *Id.*; *see also Ashcroft v. Iqbal*,

8  556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to *Bivens*

9  and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the

10  official's own individual actions, has violated the Constitution").

11       Pompilius fails to allege colorable claims against Castro, Baker, Triston, Dzurenda, and

12  Doe investigator general in this claim. There are no allegations to support Eighth or Fourteenth

13  Amendment claims against these supervisory defendants and there are no allegations that they

14  knew that Mullins, Wheeler, and Gonzales were going to commit each of these different acts

15  throughout the specified time period. I dismiss this claim with prejudice as amendment would be

16  futile.[3]

17       **G.     Counts 2, 4, 6, 8, and 10**

18       In Counts 2, 4, 6, 8, and 10, Pompilius alleges state law claims for negligence, gross

19  negligence, negligent and intentional infliction of emotional distress, failure to train, and failure

20  to supervise against various defendants. ECF No. 13 at 11, 16, 25, 33, 44.

21       As an initial matter, it appears that the State of Nevada and the NDOC have waived their

22  sovereign immunity with respect to the state law claims because the State of Nevada consented

23

---

[3] I previously dismissed this claim in the first amended complaint. ECF No. 12 at 6-7.

16

to removal.  *See Lapides v. Bd. of Univ. Sys. Of Ga.*, 535 U.S. 613 (2002) (holding that state's removal of suit to federal court constitutes waiver of its sovereign immunity).  Nonetheless, I dismiss the state law claims without prejudice because Pompilius does not provide sufficient allegations to support these claims.

## III.    MOTION TO EXTEND COPY WORK

Pompilius has filed a motion to extend his copy work limit to file more documents in his habeas proceedings. ECF No. 16.  An inmate has no constitutional right to free photocopying. *Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir. 1991).  NDOC administrative regulation 722.01(7)(D) states that inmates "can only accrue a maximum of $100 debt for copy work expenses for all cases, not per case."  In this district, courts have ordered a prison to provide limited photocopying when necessary for an inmate to provide copies to the court and other parties. *See Allen v. Clark Cnty. Det. Ctr.*, 2:10-CV-00857-RLH, 2011 WL 886343, *2 (D. Nev. Mar. 11, 2011).  I dismiss this motion without prejudice.  Pompilius can seek an extension of copy work limit in his habeas case.

## IV.    CONCLUSION

I therefore order that the operative complaint is the SAC (ECF No. 13).

I further order that the portions of Count 1 alleging free exercise of religion and equal protection violations will proceed against Calderin, Williams, Dzurenda, Wickham, Thomas, Snyder, and Doe RRT members (when Pompilius learns their identities).  However, the portion of Count 1 alleging RLUIPA violations is dismissed without prejudice.

I further order that the portions of Count 3 alleging free exercise of religion and RLUIPA violations will proceed against Calderin, Williams, Thomas, Snyder, and Doe RRT members

(when Pompilius learns their identities).  The portion of Count 3 alleging equal protection violations will proceed against Calderin.

I further order that Count 5, alleging free exercise of religion, equal protection, and RLUIPA violations, will proceed against Calderin, Williams, and Thomas.

I further order that the portions of Count 7 alleging free exercise of religion and RLUIPA violations will proceed against Calderin, Williams, and Thomas.  The portion of Count 7 alleging equal protection violations is dismissed without prejudice.  Defendants Dzurenda, Wickham, Snyder, and Doe RRT members are dismissed without prejudice from this count.

I further order that the portion of Count 9 alleging free exercise of religion violations will proceed against Calderin, Thomas, Williams, and Doe RRT members (when Pompilius learns their identities).  The portion of Count 9 alleging equal protection violations will proceed against Calderin.  Defendants NDOC, Dzurenda, Wickham, and Snyder are dismissed without prejudice from this count.

I further order that Count 11 is dismissed with prejudice as amendment would be futile.

I further order that Counts 2, 4, 6, 8, and 10, alleging state law tort claims, are dismissed without prejudice.

I further order that defendants State of Nevada, NDOC, Baker, Filson, Triston, and Castro are dismissed without prejudice from this case.

I further order that the motions for preliminary injunction (ECF Nos. 14, 15) will be addressed in a separate order.

I further order that the motion for copy work extension **(ECF No. 16) is denied** without prejudice.

I further order that given the nature of the claims that I have permitted to proceed, this action is stayed for 90 days to allow Pompilius and the defendants an opportunity to settle their disputes before an answer is filed or the discovery process begins.  During this 90-day stay period and until I lift the stay, no other pleadings or papers shall be filed in this case and the parties shall not engage in any discovery.  Nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the court to do so.  I will refer this case to the court's Inmate Early Mediation Program, and a separate order will be entered. Regardless, within 90 days from the date this order is entered, the Office of the Attorney General shall file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay.  If the parties proceed with this action, the court will issue an order setting a date for the defendants to file an answer or other response.

I remind the parties that settlement may or may not include payment of money damages. It also may include an agreement to resolve Pompilius's issues differently.  A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

I further order that if any party seeks to have this case excluded from the inmate mediation program, that party shall file a "motion to exclude case from mediation" within 21 days of the date of this order.  The responding party shall have seven days to file a response.  No reply shall be filed.

I further order the Clerk of the Court to electronically serve a copy of this order and a copy of Pompilius's SAC (ECF No. 13) on the Office of the Attorney General of the State of

Nevada, by adding the Attorney General of the State of Nevada to the docket sheet.  This does not indicate acceptance of service.

I further order the Attorney General's Office to advise the court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of the defendants for the purpose of settlement.  No defenses or objections, including lack of service, shall be waived as a result of the filing of the limited notice of appearance.

Dated: June 8, 2020

_____
U.S. District Judge

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Ammianus Pompilius
*also known as*
Anthony Prentice,

        Plaintiff,

    v.

State of Nevada, et al.,

        Defendants.

Case No.  2:18-cv-01801-APG-VCF

REPORT OF ATTORNEY GENERAL RE:
RESULTS OF 90-DAY STAY

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL SHALL FILE THIS FORM.  THE INMATE PLAINTIFF SHALL NOT FILE THIS FORM.**

      On _____ [*the date of the issuance of the screening order*], the court issued its screening order stating that it had conducted its screening under 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed.  The court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the screening order to indicate the status of the case at the end of the 90-day stay.  By filing this form, the Office of the Attorney General hereby complies.

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.**  [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

    \_\_\_\_\_    A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*).  (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case.  (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____ None of the above five statements describes the status of this case.  Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*).  (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case.  Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____          _____

22

Print                                      Signature

Address: _____          Phone: _____

_____

_____                    Email: _____