# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| AMMIANUS POMPILIUS, also known as ANTHONY PRENTICE,<br><br>Plaintiff<br><br>v.<br><br>STATE OF NEVADA, et al.,<br><br>Defendants | Case No.: 2:18-cv-01801-APG-VCF<br><br>**Order Granting in Part Motions for Preliminary Injunction**<br><br>[ECF Nos. 14, 15] |

Plaintiff Ammianus Pompilius is an inmate at High Desert State Prison (HDSP). He practices the Qayinite religion. He challenges, among other things, the denial of his requests to receive the common fare diet and to access the chapel. He asserts claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA), the Free Exercise Clause of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment.[1] He seeks an injunction ordering the defendants to provide him with the common fare diet and chapel access, and to amend Nevada Department of Corrections (NDOC) policy to make it easier for inmates to receive religious dietary accommodations.[2] The defendants oppose the requested injunctive relief.

---

[1] Pompilius also asserted state law torts that were screened out. *See* ECF No. 19.

[2] Pompilius also requests that I take judicial notice of the defendants' alleged interference with his access to the court and ability to conduct legal research. ECF Nos. 34, 37. I deny those motions based on Federal Rule of Evidence 201. I may "judicially notice a fact that is not subject to reasonable dispute because it" either "is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The assertions in Pompilius's motions for judicial notice do not meet these requirements.

Pompilius has shown a likelihood of success in proving that his beliefs are sincerely held and that the denials of his requests related to his diet and chapel access substantially burden his religious exercise without any compelling government interest demonstrated by the defendants. I therefore grant in part Pompilius's motions for a preliminary injunction, consistent with the requirement that such relief be narrowly drawn.

**I. ANALYSIS**

To qualify for a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, under the sliding scale approach, the plaintiff must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Where a party seeks a mandatory injunction ordering the "responsible party to take action," I must "deny such relief unless the facts and law clearly favor the moving party." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quotation omitted).

Additionally, in the context of a civil action challenging prison conditions, injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). I must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out" in § 3626(a)(1)(B). *Id.* A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear

showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation and emphasis omitted).

### A. PLRA Exhaustion

The defendants argue that Pompilius is not entitled to injunctive relief as to his motion regarding his diet because he has not exhausted administrative remedies under the Prison Litigation Reform Act (PLRA). They provide a grievance history report showing no second level grievances by Pompilius regarding his diet. Pompilius responds that he filed a second level grievance and he provides a copy of it, along with correspondence from NDOC acknowledging the existence of that second level grievance.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies prior to filing a lawsuit is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). That means the inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citation omitted). The inmate thus must comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Consequently, the defendants bear the burden of proving the inmate failed to exhaust an available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).

If the defendants do so, then the burden shifts to the inmate to show "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quotation omitted).

NDOC's grievance process is governed by Administrative Regulation (AR) 740. ECF No. 25-4 at 2. Under the version of AR 740 in effect at the time of Pompilius's diet-related grievances, "[a]n inmate who is dissatisfied with the response to a grievance at any level may appeal the grievance to the next level," consistent with AR 740's other requirements. *Id.* at 6. The regulation outlines the procedure for filing informal, first level, and second level grievances. *Id.* at 7-12.

Pompilius has presented evidence that he submitted a second level grievance regarding his diet under grievance number 2006-30-65764. ECF No. 27 at 14-16. Pompilius also attached an NDOC form that acknowledges the existence of diet-related second level grievance No. 2006-30-65764. ECF No. 27 at 18. At this stage, Pompilius has sufficiently demonstrated a likelihood of success in defeating the defendants' exhaustion affirmative defense.

**B. Likelihood of Success on the Merits**

Pompilius focuses his motions for injunctive relief on his claim that the defendants violated the RLUIPA by denying his request to receive the common fare diet[3] and denying him access to the chapel. Under RLUIPA, the government may not impose a substantial burden on the religious exercise of an inmate unless that burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)–(2). RLUIPA

---

[3] Pompilius appears to refer to the common fare diet and the kosher diet interchangeably.

4

must be "construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc–3(g)). "RLUIPA defines 'religious exercise' as 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008) (quoting § 2000cc–5(7)(A)). However, "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015) (citation omitted).

      *1. Sincerity of Belief*

The defendants argue that Pompilius's religion is not recognized by NDOC and does not require a kosher diet. They further argue that he did not provide any "admissible evidence to establish Qayinism is a religion of its own." ECF No. 26 at 8. Pompilius responds that his request "was based upon a sincere religious basis," which is sufficient under RLUIPA. ECF No. 27 at 3.

The sincerity of Pompilius's beliefs is a question of fact. *United States v. Seeger*, 380 U.S. 163, 185 (1965). "Though the sincerity inquiry is important, it must be handled with a light touch, or 'judicial shyness.'" *Moussazadeh v. Texas Dep't of Crim. Just.*, 703 F.3d 781, 792 (5th Cir. 2012), *as corrected* (Feb. 20, 2013) (quoting *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 262 (5th Cir. 2010)). "This inquiry is thus limited to 'almost exclusively a credibility assessment' because '[t]o examine religious convictions any more deeply would stray into the realm of religious inquiry, an area into which [courts] are forbidden to tread.'" *Pasaye v. Dzurenda*, 375 F. Supp. 3d 1159, 1167 (D. Nev. 2019), *on reconsideration in part*, No. 2:17-cv-02574-JAD-VCF, 2019 WL 2905044 (D. Nev. July 5, 2019), (quoting *Moussazadeh*, 703 F.3d 781, 792).

Pompilius can likely establish the sincerity of his beliefs. He states that "as a Qayinite, [he] believes that he must maintain a kosher diet consistent with his faith." ECF No. 13 at 12. He describes the sources of that belief, including specific religious texts. *Id.* Pompilius states that ceremonial magic is "central to the practice of Qayinism," and to practice his religion, he needs "a room within the chapel because his religious practices are temple based." *Id.* at 18. The defendants have not refuted the sincerity of his beliefs. He thus has shown a likelihood of success in showing that his requests for chapel time and the common fare diet are based on his sincerely held religious beliefs.

The defendants also argue that Pompilius does not meet the requirements of the test in *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981), which examined "three useful indicia to determine the existence of a religion" under the First Amendment.[4] *Id.* at 1032 (internal quotation marks and citation omitted). However, Pompilius' motion focuses on RLUIPA, which defines religious exercise as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). "The definition is intentionally broad." *Walker v. Beard*, 789 F.3d 1125, 1134 (9th Cir. 2015) (citation omitted). This broad definition is one of the ways in which Congress "distinguish[ed] RLUIPA from traditional First Amendment jurisprudence." *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008). The defendants' reliance on *Africa* thus lacks relevance to Pompilius's current motions.

////

---

[4] The defendants further assert that even if Pompilius's rights were violated, they are entitled to qualified immunity, so Pompilius is not likely to succeed on the merits. But "[q]ualified immunity is only an immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief." *Hydrick v. Hunter*, 669 F.3d 937, 940-41 (9th Cir. 2012) (citations omitted).

### 2. *Substantial Burden and Compelling Government Interest*

"To constitute a substantial burden, a limitation of religious practice 'must impose a significantly great restriction or onus upon such exercise.'" *Walker*, 789 F.3d at 1135 (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). There is "little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise." *Greene*, 513 F.3d at 988 (citations omitted).

Pompilius contends that the refusal to provide him the common fare diet means that he is unable "to practice a part of his sincerely held religious beliefs." ECF No. 14 at 11. He states that by not maintaining a kosher diet, he is "defil[ing] himself" and "doing something that is completely forbidden" by his religion. *Id.* And he argues that his religious exercise is substantially burdened by his inability to access the chapel. ECF No. 15 at 15. The defendants do not respond to these arguments. Pompilius thus has shown a likelihood of success in establishing that the defendants have imposed a substantial burden on his religious exercise.

The defendants thus must demonstrate that their decisions to deny the common fare diet and chapel time to Pompilius "serve[ ] a compelling governmental interest." *Warsoldier*, 418 F.3d at 996-97 (citation omitted). They have not done so. Without any indication from the defendants as to what the compelling governmental interest may be, Pompilius has established a likelihood of success in showing that no such interest exists. Pompilius therefore has established that he is likely to succeed on the merits.

### C. Irreparable Harm

"[C]ourts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris*, 401 U.S. 37, 43–44 (1971). A plaintiff therefore must establish that, absent an injunction, there is a

likelihood that he will suffer irreparable harm. *Winter*, 555 U.S. at 22.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  "This principle applies with equal force to the violation of RLUIPA rights because RLUIPA enforces First Amendment freedoms, and the statute requires courts to construe it broadly to protect religious exercise." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (citations omitted). *See also Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 584 F. Supp. 2d 766, 795 (D. Md. 2008) ("[T]he infringement of one's rights under RLUIPA constitute[s] irreparable injury."); *Pasaye*, 375 F. Supp. 3d at 1170-71 (finding likelihood of irreparable harm based on likely RLUIPA violation).

The defendants contend that Pompilius will not suffer irreparable harm because he allegedly converted to Qayinism in 2008 and "has not received a common fare diet under this religion ever since." ECF No. 25 at 8.  They also argue that Pompilius may still attend services with the Thelema group or "practice his beliefs in his own cell." ECF No. 26 at 11.  However, the defendants do not respond to Pompilius's argument that "Qayinism and Thelema are two distinct religions," Qayinites view the Thelema religion "as evil," and the two groups, having "become hostile to one another," "can no longer come to terms with the sharing of chapel time." ECF No. 15 at 3-4.  Pompilius also asserts that he has been unable to access the chapel even to attend services with the Thelema group. ECF No. 13 at 22.  The defendants did not address Pompilius's stated inability to access the chapel.  Moreover, Pompilius has presented evidence that his exercise of sincerely held religious beliefs has been substantially burdened by the defendants' denial of his requests for the common fare diet and chapel time.  I have concluded that Pompilius is likely to succeed on the merits of his RLUIPA claim.  That conclusion, coupled

with his statements as to the burden on his religious exercise, demonstrates that he is likely to suffer irreparable harm in the absence of an injunction.

### D. Balance of Hardships and Public Interest

When ruling on a motion for a preliminary injunction, I "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," paying particular attention to the public consequences. *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987)). The public interest inquiry primarily focuses on the impact on non-parties, as opposed to the parties. *Sammartano v. First. Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights," and "[c]ourts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Id.* (internal citation omitted).

The free exercise of one's religion is an important civil right. Pompilius has shown that he has had to abandon the diet and practices required by his religious beliefs because the defendants denied his requests. The defendants contend that the injunction Pompilius seeks related to his diet would interfere with NDOC operations because "it would grant special privileges to Plaintiff that are not enjoyed by all other inmates." ECF No. 25 at 9. The defendants also argue that Pompilius "is still able to practice his faith whether with the Thelema faith group or in his own cell," and an injunction "would require the NDOC to recognize Qayinism as a Faith Group, despite their own determination that it is not." ECF No. 26 at 12. But the defendants do not explain how they would be harmed by placing Pompilius on the common fare diet and allowing him to access the chapel. And they have not provided evidence contradicting Pompilius's assertion that he has been unable to access the chapel. *See* ECF No. 13

at 19-20.  The risk of harm to the defendants is minimal, especially considering that the common fare diet and chapel time are provided to many other inmates.  I am not requiring NDOC to "recognize" Qayinism as a religion.  Rather, I am only requiring the defendants to provide Pompilius with a common fare diet and to confer about his access to the chapel.  When weighed against Pompilius's potential injury, the balance weighs in Pompilius's favor.

The defendants argue that "the public interest is served by allowing prison officials to use their judgment." ECF No. 25 at 9-10.  While that may be true to a degree, the defendants have utterly failed to provide evidence of any compelling interest animating their decisions. The public interest does not support allowing the defendants to engage in acts that likely violate RLUIPA.  This factor also favors Pompilius.

**E.  Scope of the Injunction**

Pompilius has demonstrated that he is likely to succeed on the merits of his RLUIPA claim, that he is likely to suffer irreparable harm in the absence of an injunction, that the balance of hardships tips in his favor, and that the public interest favors injunctive relief.  However, because a preliminary injunction in the prison context must be narrowly drawn, I do not grant all of the relief Pompilius requests.  He requests the common fare diet and an amendment to the religious diet policy to include RLUIPA training and to make it easier for inmates to receive accommodations.  He further requests chapel time, the inclusion of 12 specific Qayinite inmates on the list of Qayinites attending the same service, and the ability of this group to practice in the room assigned to them, "including . . . the purchase of religious items required." ECF No. 15 at 19.  Lastly, he requests costs for the time he spent on research and writing, sanctions of $500 per day on the defendants if they do not comply, ordering the defendants not to confiscate his religious items because he switched to Qayinism, and ordering the NDOC to recognize

Qayinism. Aside from his request for the common fare diet and chapel access, Pompilius's other requests are not appropriate because he does not provide a sufficient basis for them. And as a pro se litigant, Pompilius cannot seek relief on behalf of other inmates. *See C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) (holding that a pro se litigant may not "appear as an attorney for others than himself").

I order the defendants to place Pompilius on the common fare diet. As for his request for chapel access, the parties' briefing did not adequately explain the specifics of Pompilius's chapel needs and why the defendants denied his request. I order the parties to confer about Pompilius's needs related to the chapel. The defendants must confer with him about honoring those requests or finding a compromise that works for all parties. If the parties cannot agree, they should file supplemental briefs. Pompilius's brief should explain his specific needs related to the chapel, and the defendants' response should explain why those requests are invalid, improper, or should not be honored. The injunctive relief I have granted is entered against the parties remaining after the screening order to the extent that they have the authority to fulfill these orders. *See* ECF No. 19.

## III. CONCLUSION

I THEREFORE ORDER that plaintiff Ammianus Pompilius's motion for preliminary injunction **(ECF No. 14) is GRANTED in part**. By February 12, 2021, the defendants shall place plaintiff Ammianus Pompilius on the common fare diet until further order of the court or until he requests to be removed from that diet.

I FURTHER ORDER that plaintiff Ammianus Pompilius's motion for preliminary injunction **(ECF No. 15) is GRANTED in part**. The parties are to confer by March 1, 2021 about honoring Pompilius's requests for chapel access or finding a compromise suitable for all

11

parties. If they reach an agreement, the parties are to file a stipulation regarding their agreement by March 19, 2021. If they cannot agree, Pompilius must file his supplemental brief by May 1, 2021, and the defendants may file a response within 21 days of service of Pompilius's brief.

DATED this 5th day of February, 2021.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE