UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AMMIANUS POMPILIUS, also known as ANTHONY PRENTICE,<br><br>Plaintiff<br><br>v.<br><br>JAMES DZURENDA,[1] et al.,<br><br>Defendants | Case No.: 2:18-cv-01801-APG-VCF<br><br>**Order Denying Motion for Preliminary Injunction**<br><br>[ECF No. 15] |

Plaintiff Ammianus Pompilius supplements his earlier motion for a preliminary injunction regarding chapel access at High Desert State Prison (HDSP), where he is an inmate. The parties are familiar with the facts, so I do not repeat them here except where relevant. The defendants oppose Pompilius's motion for an injunction ordering chapel access for him. They now present evidence that they had not presented in their original response to Pompilius's motion.[2] They primarily argue that his religious beliefs are not sincerely held and that denying him chapel access furthers a compelling governmental interest. I deny Pompilius's motion for injunctive relief as to chapel access based on the fuller record now before me.

**I. ANALYSIS**

To qualify for a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*,

---

[1] The screening order dismissed the State of Nevada as a defendant. ECF No. 19. So the clerk is directed to amend the caption accordingly.

[2] Had the defendants responded substantively to Pompilius's motion the first time, there would have been no need for me and the parties to expend time and resources on supplemental briefing.

555 U.S. 7, 20 (2008).  Alternatively, under the sliding scale approach, the plaintiff must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  Where a party seeks a mandatory injunction ordering the "responsible party to take action," I must "deny such relief unless the facts and law clearly favor the moving party." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quotation omitted).

Additionally, in the context of a civil action challenging prison conditions, injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).  I must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out" in § 3626(a)(1)(B). *Id.*  A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation and emphasis omitted).

The present motion for injunctive relief focuses on Pompilius's claim that the defendants violated the Religious Land Use and Institutionalized Persons Act (RLUIPA) by denying him access to the prison chapel.  Under RLUIPA, the government may not impose a substantial burden on an inmate's religious exercise unless that burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)–(2).  RLUIPA must be "construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc–

2

3(g)). "RLUIPA defines 'religious exercise' as 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008) (quoting § 2000cc–5(7)(A)). However, "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015) (citation omitted).

The defendants first argue that Pompilius's religious belief is not sincere. However, I need not address that issue because assuming that his belief is sincere and his religious exercise is substantially burdened, that burden furthers a compelling governmental interest by the least restrictive means. In making this assessment, I ask "whether the government's particular interest in burdening this plaintiff's particular religious exercise is justified in light of the record in this case." *Yellowbear v. Lampert*, 741 F.3d 48, 57 (10th Cir. 2014).

According to the defendants, denying Pompilius chapel access serves the compelling interest of maintaining security and order in the prison. Prison security is a compelling governmental interest. *Warsoldier*, 418 F.3d at 999 (citation omitted). The defendants point to the declarations of defendant Chaplain Calderin and Associate Warden Jennifer Nash to support their argument.

First, the defendants contend that Pompilius wants to access the chapel side room "as a cover to engage in illicit sexual activity." ECF No. 79 at 14-15. Calderin explains that there are sheds next to the outdoor worship grounds currently used by Pompilius, and Calderin believes "the sheds might be used by inmates for the purpose of engaging in sexual activity that is out-of-sight of prison guards." ECF No. 79-3 at 5. He began to suspect this when inmates, including Pompilius, frequently asked him to leave the sheds open. *Id.* Calderin sees no need for the sheds to remain unlocked. *Id.* He reported his concerns to an associate warden, and she ordered him to

permanently keep the sheds locked. *Id.* He states that Pompilius and other inmates continued to ask him to unlock the sheds. *Id.*

Second, Calderin believes Pompilius wants to use the chapel side room because it is unsupervised and "cannot be seen into directly," whereas the worship grounds where Pompilius currently practices have more traffic and are visible to a tower manned at all hours. *Id.* at 5-6. Associate Warden Nash states that "[a]ny illicit activity outside and in the Earth-based worship area would be noticed by" nearby prison staff. ECF No. 79-7 at 4.

Third, Calderin describes an incident from 2018 in which Pompilius was accused of defacing chapel property with pentagrams. He states that Pompilius and other inmates were allowed to use a chapel side room because of bad weather. ECF No. 79-3 at 4. According to Calderin, when he checked on the room Pompilius's group was in, he saw that the lights were off and the group was "performing some kind of ritual headed by" Pompilius. *Id.* Calderin states that a pentagram was drawn on the floor and on the TV. *Id.* He believes that when such symbols are drawn on the chapel space, that may cause "grave offense" to other religious groups that use the room and it "has the potential to spark a violent incident." *Id.* Calderin contests Pompilius's argument that pentagrams are routinely drawn during his group's weekly prayer, stating that pentagrams are not drawn when Pompilius's group worships outside. *Id.* Nash states in her declaration that she believes "defacing chapel property with a pentagram/pagan symbols could potentially incite other inmates to violence and/or cause tension between different faith-groups." ECF No. 79-7 at 3.

The defendants have provided sufficient evidence to show the compelling governmental interest in maintaining security and order. They further argue that allowing Pompilius to use a plot of land near the chapel is the least restrictive means of furthering the compelling

4

governmental interest.  Pompilius contends that alternatives include posting an officer at the chapel during chapel times and limiting his group to the chapel room with a camera and windows.  However, Associate Warden Nash states that constant supervision of the chapel side rooms is not possible because of low levels of staffing and budgetary limitations. ECF No. 79-7 at 4.  And there is a factual dispute as to whether there is a chapel room that can feasibly be monitored in some way, and whether sending an officer to the room once a concern arises would still further the compelling governmental interest.  On the record before me at this stage, allowing Pompilius to use the outdoor worship grounds appears to be the least restrictive means.

In Pompilius's declaration, he disputes all of the defendants' assertions, insisting that they are false.  Another inmate also maintains in his declaration that the defendants' assertions are false.  But when a party seeks a mandatory injunction ordering the "responsible party to take action," I must "deny such relief unless the facts and law clearly favor the moving party." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quotation omitted).  Given the defendants' newly presented evidence, the facts and law do not clearly favor Pompilius.  He is not likely to succeed on the merits.  Without an RLUIPA violation, the other factors for injunctive relief also do not warrant granting his motion.  Accordingly, I deny Pompilius's motion for a preliminary injunction as to chapel access.

## II.  CONCLUSION

I THEREFORE ORDER that plaintiff Ammianus Pompilius's motion for preliminary injunction **(ECF No. 15) is denied**.

/ / / /

/ / / /

/ / / /

5

I FURTHER ORDER the clerk of the court to amend the caption of this case to remove the State of Nevada from the case caption.

DATED this 2nd day of August, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE